## LUBBOCK OIL REFINING CO. et al. v. BOURN.

### No. 4738.

Court of Civil Appeals of Texas. Amarillo.
July 3, 1936.

Rehearing Denied Sept. 7, 1936.

Vickers & Campbell and Robt. A. Sowder, all of Lubbock, for appellants.

Lockhart & Brown, of Lubbock, for appellee.

JACKSON, Justice.

On February 1, 1935, D. F. Bourn made application to the district judge of the Ninety-Ninth judicial district, in Lubbock county, to have a receiver appointed to take charge of all the assets and physical properties and operate the business of the Lubbock Oil Refining Company.

The applicant alleged:

That about February 1, 1934, he and A. S. Everest were engaged in the oil refining business in the city of Lubbock and owned a refinery and the equipment connected therewith. That he owned an undivided one-third interest and A. S. Everest owned an undivided two-thirds interest in such refinery and equipment. That about said date the Lubbock Oil Refining Company was duly and legally incorporated under and by virtue of the laws of the state of Texas for the purpose of conducting a general refinery business in said city, and all the assets of such corporation were furnished by him and A. S. Everest, and consisted of his one-third undivided interest and A. S. Everest's undivided two-thirds interest in the refinery and equip-

ment owned by them prior to the incorporation of the Lubbock Oil Refining Company. That it was agreed that the corporation would issue to applicant, for the part of the assets he had conveyed to the corporation, 60 shares of the capital stock of the company. That such shares were never issued to him, but were issued to A. S. Everest, the president of the company, and, while applicant is not the record owner of any of said stock, in truth and in fact he is a stockholder, entitled to receive his shares, and to all the rights of any other stockholder of the corporation.

That, after the company was incorporated, it secured a permit to do business under its charter and to manufacture and sell gasoline, and did manufacture and sell gasoline until the 1st day of January, 1935, on which day the corporation was unable to secure another permit or to make bond therefor, and had not, since said time, been able to manufacture or sell gasoline or carry out the purposes of the corporation.

That the corporation is in arrears with the state of Texas for taxes; that the state is threatening to sue to collect said taxes; that the corporation has various and sundry other creditors, the indebtedness to whom it is unable to meet, on account of all of which it is not able to conduct the business for which it was organized.

That said company has a contract to furnish the city of Lubbock its fuel oil, which is a valuable contract, and will in all probability be abandoned unless some relief is granted, and the corporation, and especially the stockholders thereof, will suffer irreparable loss.

That the business of the Lubbock Oil Refining Company has been greatly mismanaged by A. S. Everest, C. E. Maedgen, and others claiming to be interested in the company, and on account of such mismanagement the corporation is in imminent danger of actual or impending insolvency. That, on account of such impending insolvency and mismanagement, the applicant is entitled to have a receiver appointed to take charge of the assets and physical properties of the corporation, and operate the business thereof.

He prayed that the corporation be cited, and upon a hearing a receiver be appointed to whom the assets and physical properties of the corporation should be delivered, and be operated by such receiver, under order of the court.

On the same day A. S. Everest, as president of the Lubbock Oil Refining Company, in writing waived the issuance and service of citation, and admitted "the substantial allegations of the petition."

A. E. Patterson, on the same date, was, by the judge of the district court of Lubbock county, appointed receiver of the Lubbock Oil Refining Company; he gave bond, which was approved, and took possession of the properties, the business of which he was still operating on May 1, 1936, when the Lubbock Oil Refining Company filed a motion with the court to vacate the receivership and discharge the receiver, alleging that the application for the receiver, and the answer of A. S. Everest, as president, were collusively made with intent to injure the holders of the majority of the stock of said corporation, and pleaded various other matters we deem unnecessary to set out. The corporation asked that the receiver be required to render an account for all of his transactions.

C. E. Maedgen and Mineola Richards filed a plea of intervention, asking that the receivership be vacated and the receiver be discharged on substantially the same allegations as contained in the motion of the Lubbock Oil Refining Company.

D. F. Bourn and the receiver urged a general demurrer to both motions, which the court sustained; they refused to amend, their motions were dismissed, and they appealed.

The appellants contend, by proper assignment, that to authorize the appointment of a receiver it is necessary that a suit be pending in which some relief is sought in addition to the appointment of a receiver, and, since the petition of D. F. Bourn shows that the sole purpose of the suit was the appointment of a receiver, the court was without jurisdiction to place the property of the Lubbock Oil Refining Company in a receivership, and such order was void.

We deem it unnecessary to pass on this assignment, since, in our opinion, the court was without jurisdiction for another reason which presents fundamental error apparent of record.

The petition for the appointment of a receiver contains no allegation of the amount for which the Lubbock Oil Refining Company was incorporated or the number of shares of the capital stock or the value of any share. Neither did it con-

tain any allegation of the value of the property and assets of such corporation, or the value of appellant's interest, or probable interest, therein, by which the amount in controversy can be ascertained.

Section 8 of article 5 of the Constitution, defining the jurisdiction of district courts, after naming special subjects over which the district court is given original jurisdiction, among other things, provides: "The District Court shall have original jurisdiction * * * of all suits for the trial of the right of property levied upon by virtue of any writ of execution, sequestration or attachment when the property levied on shall be equal to or exceed in value five hundred dollars; of all suits, complaints or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to five hundred dollars exclusive of interest; * * * and said court and the judges thereof, shall have power to issue writs of habeas corpus, mandamus, injunction and certiorari, and all writs necessary to enforce their jurisdiction."

Section 16 of article 5, defining the jurisdiction of county courts, among other things, says: "The County Court * * · * shall have exclusive jurisdiction in all civil cases when the matter in controversy shall exceed in value $200, and not exceed $500, exclusive of interest, and concurrent jurisdiction with the District Court when the matter in controversy shall exceed $500, and not exceed $1,000, exclusive of interest; * * * and the County Court, or judge thereof, shall have power to issue writs of injunctions, mandamus and all writs necessary to the enforcement of the jurisdiction of said Court, and to issue writs of habeas corpus in cases where the offense charged is within the jurisdiction of the County Court, or any other court or tribunal inferior to said Court."

It will be observed that neither section 8, defining the jurisdiction of district courts, nor section 16, defining the jurisdiction of county courts, mentions by name receivers or receiverships, but the language relative to the power of each court to issue writs of habeas corpus, mandamus, injunction, and all writs necessary to enforce the jurisdiction is similarly comprehensive.

"Relief by way of receivership is equitable in its nature, and is controlled by and administered upon equitable principles, even where it has been extended by statute * * *. The appointment of a receiver is variously stated to be in the nature of, or treated as in effect, an attachment, sequestration or equitable execution before judgment." 53 C.J. pp. 19 and 20, § 3.

The provision of article 2293, R.C.S., relied upon by appellee to sustain the action of the court in appointing the receiver, is as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases: * * *

"3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights."

"Competent jurisdiction" is defined as follows: "The term is susceptible of two meanings; it may signify that the court must acquire and exercise jurisdiction competent to grant an application, through and by reason of a strict conformity to the requirements of a statute, or it may signify jurisdiction over the subjectmatter, a sort of authority in the abstract, to hear and determine a case. In its usual signification, however, the term embraces the person as well as the cause. A court of competent jurisdiction is one having power and authority of law at the time of acting to do the particular act." 12 C.J. p. 236.

The meaning of the language "any judge of a court of competent jurisdiction" in article 2293 obviously is that the judge, in order to have the power to appoint a receiver, must preside over a court having jurisdiction of the subject matter involved. It is unreasonable to conclude that the judge could, by the appointment of a receiver, take charge of, control, manage, and dispose of property over which his court had no jurisdiction because of the value thereof, either in law or in equity. The appointment of a receiver is in effect an attachment, sequestration or equitable execution, or writ. We are of the opinion that, if the value of the subject matter involved is within the prescribed jurisdiction of the county court, the judge thereof has the power to appoint a receiver.

The jurisdiction of the district court, as well as the jurisdiction of the county court, is determined by the amount alleged in the petition, unless it is shown by pleadings and proof that such amount was alleged fraudulently for the purpose of giving the court jurisdiction.

"The necessary jurisdictional averments must appear in the petition itself. The petition is the first step in the institution of suit, the first page in the record which will conclude the rights of the parties. It invokes the jurisdiction of the court and presents the facts relied upon for relief. Since these are its purposes and functions, it must not only state a cause of action, but must affirmatively plead facts which bring the case within the jurisdiction of the court in which it is filed." Brown v. Peters (Tex.Com.App.) 94 S.W. (2d) 129, 130.

"We have held that the county court has power to grant extraordinary writs, such as mandamus and injunction, in cases over which it has jurisdiction of the amount in controversy. The value of the property not appearing by averment in the petition, it may be that it was worth between $200 and $1,000. If so, the county court would have had jurisdiction of the case, and power to grant the writ of injunction. It follows that it does not appear affirmatively from the petition that the district court had exclusive jurisdiction of the controversy." Smith v. Horton, 92 Tex. 21, 46 S.W. 627.

Passing on the jurisdiction of the district court to appoint a receiver, the Court of Civil Appeals at Fort Worth, speaking through Chief Justice Conner, in Childs et al. v. Brown, 151 S.W. 1154, said: "We are of opinion that the judgment must be reversed for want of a showing of jurisdiction in the court which granted the order. Construing the petition most liberally in favor of appellee, it may possibly be said that the plaintiff sought a dissolution of the partnership, though this is not very clear. It is clear, however, that the petition contains no allegation of the value of the partnership business as a whole, nor of the value of the interest of appellee therein. It therefore fails to show that the subject-matter in controversy was of value sufficient to confer jurisdiction upon the district court."

The Texarkana Court of Civil Appeals, speaking through Associate Justice Hodges, in Style et al. v. Lantrip, 171 S.W. 786, 788, said: "It is not only essential that the petition should state grounds calling for the appointment of the receiver to take charge of the property involved in the litigation, but it should also show upon its face an independent cause of action with-in the jurisdiction of the court. It should show that the subject-matter or amount in controversy is within the court's jurisdiction." See, also, Marion County v. Perkins Bros. Co. (Tex.Civ.App.) 171 S.W. 789; Motex Oil Corporation v. Taylor (Tex.Civ.App.) 233 S.W. 520; Mebane Cotton Breeding Ass'n v. Sides (Tex.Civ.App.) 257 S.W. 302, and authorities cited.

The appointment of a receiver was made on the petition of the applicant fifteen months before such receivership and appointment was challenged by the motions of appellants to vacate such receivership. The allegations of the value of the subject matter of the litigation made in the motions of appellants did not validate the insufficiency of the petition on which the receiver was appointed. De Witt County v. Wisch-Kemper, 95 Tex. 435, 67 S.W. 882; Le Master v. Lee et al. (Tex.Civ.App.) 150 S.W. 315, and authorities cited; Brown v. Peters, supra.

The judgment is reversed, and the cause is remanded.