In re Douglas L. SAMUEL, Jr. and Diane S. Samuel, t/a Samuel-Ridge Homes and Samuel Builders and Remodeling Company, Debtors.

Bankruptcy No. 83–00698–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 9, 1984.

Nathan A. Nelson, Urbanna, Va., for debtor.

James R. Sheeran, Richmond, Va., for Hughes.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on the objection by Elmer A. Hughes and Marilyn T. Hughes to an exemption claimed by the debtors of a forty-year-old Chesapeake deadrise workboat valued in the amount of $1,500.00 and claimed exempt under *Va. Code* § 34–26. That section provides an exemption to an oysterman or fisherman of his boat and tackle not exceeding $1,500.00 in value and if the boat and tackle exceed $1,500.00 in value, the same shall be sold and the oysterman or fisherman shall receive $1,500.00 in lieu of such boat and tackle. After an evidentiary hearing on the objection, this Court makes the following finding of facts and conclusions of law.

## STATEMENT OF FACTS

Prior to 1982, Douglas L. Samuel, Jr. was exclusively engaged in the home construction and remodeling business, operating as a sole proprietorship under the names Samuel-Ridge Homes and Samuel Builders and Remodeling Company. In 1982, Samuel grossed approximately $49,000.00 and netted approximately $13,000.00 from his home building and remodeling business. In that same year, he had gross sales of $4,500.00 and had sustained a net loss of $4,164.00 from his efforts to engage in the crabbing business. As part of the crabbing operation, he owned a truck, the Chesapeake deadrise boat and about 220 crabpots. The debtor's federal income tax return for 1982 also disclosed that the debtor spent $252.00 for bait used in the crabpots.[1] The truck was used to carry seafood to Doswell, Virginia where he apparently had an outlet for the sale of seafood. Prior to the year 1982, he had had no experience in crabbing, but had been in the home building business since 1966.

It was the debtor's testimony that in the year 1982 he spent 90 percent of his time in the seafood business. There was no breakdown of how much of this time was devoted to the crabbing endeavors and the time allotted to the delivery and sale of seafood in Doswell, Virginia. The debtor also testified that he owned approximately 220 crabpots, that he spent approximately $35.00 per day for bait when the pots were baited, and that from time to time he had two or three people assist in the work and their compensation was determined on a percentage of the value of the catch. The debtor gave no clear testimony as to how many times he used the boat for crabbing during the 1982 season. The debtor was licensed as a commercial fisherman by the appropriate state agency.

Samuel testified that if he had been successful he would have continued the crabbing business, however, he was required to file a petition in bankruptcy. He also testified that his principal occupation was a builder and that he was starting up the crabbing business for his son. He admits that his statement of affairs filed in the bankruptcy proceeding does not disclose his interest in the crabbing and seafood business and he does not know why it was not included, although he said he had discussed it with his attorney. Schedule B of the petition reflects the ownership of the boat by the debtors but fails to disclose ownership of any crabpots. Mr. Samuel's testimony was that he had lost a number of pots but some had been replaced.

## CONCLUSIONS OF LAW

The issue the Court is required to determine is whether either of the debtors is a fisherman or an oysterman, and thereby entitled to exempt $1,500.00 of value in the Chesapeake deadrise work boat claimed as exempt by the debtors.[2] The joint petition

---

1. All figures reflecting the debtors gross and net income as well as the business expense deduction for bait were taken from the debtor's 1982 federal income tax return. (Plaintiff exhibit # 1).

2. *Va.Code* § 34–26 provides in pertinent part:
   In addition to the estate, not exceeding in value five thousand dollars, which every householder residing in this State shall be entitled to hold exempt, as provided in chapter 2 (§ 34–4

and the claim of exemptions do not distinguish ownership or exemptions as to Mr. and Mrs. Samuel. The evidence, however, does not reflect that Diane S. Samuel engaged in any endeavors required by the statute and any exemption claimed by her in the boat would be invalid.

The debtor's tax return indicates the home construction business was operated during the year 1982 and he is asking this Court to believe that 10 percent of his time devoted to his home building business created $49,000.00 in gross receipts with $13,000.00 net income, and 90 percent of his work time generated $4,500.00 in gross receipts and he had a $4,164.00 loss for taxable income of about $9,000.00. In the light of the respective operations of his home-building business and his crabbing and the gross earnings of each, it appears patently absurb that Mr. Samuel would have spent 90 percent of his work effort in crabbing and only 10 percent of his work effort at what he considered his primary occupation during 1982.

Irrespective of the debtor's omission of the crabbing business from his statement of affairs and his failure to include any interest in crabpots in Schedule B and the absurdity of the debtor's allegation that he spent 90 percent of his work effort at the crabbing business as being totally unrealistic, can this Court find that Douglas L. Samuel, Jr. was an oysterman or fisherman pursuant to *Va.Code* § 34–26 and consequently entitled to his exemption?

First, it is certain that he was not an oysterman but a liberal interpretation of fisherman would include a crabber. However, it is this Court's belief that the legislature did not intend that a party could engage in several trades or occupations in order to claim multiple exemptions. To do so would be to allow a debtor to engage potentially in a vocation as a mechanic, an oysterman or fisherman, and a farmer, and thereby claim as exempt, in addition to the other items listed in § 34–26, all of the following: mechanic's tools and utensils of the trade, a boat and tackle worth $1,500.00, and if a farmer pursuant to § 34–27, at least one additional horse or mule and cart or wagon, a tractor not exceeding in value $3,000.00 and other equipment and material not exceeding a value of $1,000.00.

■ If the debtor was allowed to claim the exemption of any one additional vocation, then no compelling reason would exist to deny him the exemptions of all the other vocations if he engaged in them with the hopes of making a living from them. This Court does not believe that to be the intent of the statute. For purposes of the exemption statutes a debtor may claim occupationally-related exemptions in *Va.Code* § 34–26 only in his or her principal occupation. A debtor may claim only one principal occupation. *State Bank of Kingman v. Shepherd,* 105 Kan. 206, 182 P. 653 (1919). Case law from other jurisdictions support this conclusion. *See, e.g., Mack v. Boots,* 29 Ariz. 116, 239 P. 794 (1925); *Knapp v. Bartlett,* 23 Wis. 68, 99 Am.Dec. 109 (1868); *Smalley v. Masten,* 8 Mich. 529, 77 Am.Dec. 467 (1860); *In re Nelson,* (D.Utah 1969) (published in 48 Journal of the National Conference of Referees in Bankruptcy, No. 1, at 12 (January, 1969); *see also Dowd v. Heuson,* 122 Kan. 278, 252 P. 260 (1927).

Although this Court has found no Virginia cases addressing the issue presented here, it is satisfied (1) that the Supreme Court of Virginia would adopt the reasoning of the

---

et seq.) of this title, he shall also be entitled to hold exempt from levy or distress the following articles or so much or so many thereof as he may have, to be selected by him or his agents:

. . . . .

and in case of a mechanic, the tools and utensils of his trade, and in case of an oysterman or fisherman his boat and tackle, not exceeding one thousand five hundred dollars in value; if the boat and tackle exceed fifteen hundred dollars in value the same shall be sold, and out of the proceeds the oysterman or fisherman shall first receive one thousand five hundred dollars in lieu of such boat and tackle.

No officer or other person shall levy or distrain upon, or attach, such articles, or otherwise seek to subject such articles to any lien or process.

cases cited from other jurisdictions; (2) that the decision herein denying the claimed exemption follows the spirit and intent of the exemption statute; and (3) that it does not run contra to the prevailing bankruptcy cases.

█ The Court's ruling herein does not mean that a debtor cannot change occupations and assert exemptions relating to that new occupation. This Court recognizes that individuals should not be punished for changing occupations. Merely because a debtor lacks a history of endeavor in a particular occupation will not in itself cause a debtor to be denied a claimed exemption. A debtor who wishes to change occupations, for whatever reason, should not be disadvantaged if financial difficulties occur during such a transition period. In fact, it is foreseeable that a debtor may wish to begin a new occupation as part of his "fresh start" after being forced to file bankruptcy because of bad economic fortune in an earlier occupation. Therefore, in the instant case had the debtor demonstrated that he had abandoned home building for crabbing then the exemption would be granted. However, here the weight of the evidence refutes such a claim.

First, the debtor declared building as his occupation on his bankruptcy schedules. Crabbing was not listed even as a supplemental occupation. Debtors must be mindful of the importance of accurately completing the bankruptcy schedules. Indeed, debtors attest to the veracity of the schedules' content under the penalties of perjury.

Secondly, and most persuasively, the debtor's testimony that he spent 90 percent of his time in the crabbing business is just not credible in light of the debtor's own financial disclosures in his income tax return. As stated earlier, this Court does not believe that the debtor spent 90 percent of his time to gross $4,500.00 and lose $4,164.00 in the crabbing business and 10 percent of his time to gross $49,000.00 and realize a net profit of $13,000.00 in home building.

The Court's conclusion in this regard is bolstered by the debtor's testimony that he spent approximately $35.00 per day on crabpot bait and by the debtor's disclosure that he spent $252.00 in 1982 on crabpot bait. This evidence demonstrates that the debtor only baited the crabpots approximately 7 to 10 times during the year.

Moreover, the debtor testified to ownership of over 200 crabpots but nowhere on his bankruptcy schedules or on his homestead deed does the debtor disclose or seek exemption in them. This Court can only conclude that had crabbing been the debtor's principal occupation he would have treated the objects of this occupation differently when filing a homestead deed and filing a petition in bankruptcy.[3] In addition, Samuel testified that he was starting the seafood business for his son; this fact refutes any contention that it was to be Samuel's principal occupation.

Finally, had the debtor demonstrated a sincere profit motive coupled with a clear and unequivocable intent to change occupations this Court might rule in favor of the debtor and uphold the exemption. However, the debtor has not established such facts. Of particular relevance here is the language of the Supreme Court of Michigan in *Smalley v. Masten,* 8 Mich. 529, 77 Am. Dec. 467 (1860):

... A new business, embarked in as an experiment merely, might temporarily produce more, and require more personal attention, than the old, and yet the latter be one's principal occupation because most relied on or looked to for a livelihood, and the one that would be held on to if compelled to abandon either.

8 Mich. at 531.

For the reasons discussed herein, this Court rules that neither of the debtors are a fisherman or an oysterman and, therefore, they are not entitled to claim as exempt the Chesapeake deadrise listed on Schedule B–4 of the debtors' bankruptcy petition.

An appropriate Order will issue.

---

**3.** Any crabpots owned by the debtors at the time of filing their bankruptcy petition are not exempt property under *Va.Code* § 34–26 be-

cause of the Court's ruling herein. Similarly, they are not exempt unless so claimed under *Va.Code* § 34–4.